IRELL & MANELLA LLP
David Nimmer (97170)
DNimmer@irell.com
David A. Schwarz (159376)
DSchwarz@irell.com
Alexandra Siegel (294977)
ASiegel@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:    (310) 203-7199

*Attorneys for Defendants Shelton Jackson Lee
and 40 Acres and a Mule Filmworks, Inc.*

PRIMUTH & DRISKELL LLP
Joshua R. Driskell (294616)
Josh@primuthlaw.com
790 E. Colorado Blvd., Suite 790
Pasadena, California 91101
Telephone:   (626) 389-8252
Facsimile:    (626) 289-8253

*Attorneys for Defendants Art Sims
and 11:24 Design, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN LUIS GARCIA,<br><br>       Plaintiff,<br><br>       v.<br><br>SHELTON JACKSON LEE, *et al*,<br><br>       Defendants. | Case No. 2:14-cv-04039-PA (Ex)<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY OR DISMISS THE LITIGATION**<br><br>[*Declarations of Alexandra Siegel and Art Sims and [Proposed] Order filed herewith*]<br><br>Hearing Date: April 20, 2015<br>Time: 1:30 p.m.<br>Judge: Honorable Percy Anderson |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Monday, April 20 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15 of the Spring Street Court House, located at 312 N. Spring Street, Los Angeles, California 90012, before the Honorable Percy Anderson, Defendants Art Sims, 11:24 Design, Inc., Shelton Jackson Lee (a/k/a "Spike" Lee), and 40 Acres and a Mule Filmworks, Inc. will and hereby do jointly move the Court for an order compelling arbitration and a stay (or dismissal) of the litigation of all claims by Plaintiff Juan Luis Garcia ("Garcia") in this action. Defendants' motion is based upon this Notice of Motion, the Memorandum of Points and Authorities offered in support thereof, the Declaration of Alexandra Siegel and exhibits attached thereto, the Declaration of Art Sims, all documents in the Court's file, any matters of which this Court may take judicial notice, and any evidence or argument presented on this matter.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., Defendants seek an order compelling arbitration and a stay or dismissal of all claims pursuant to a valid contract drafted, delivered, and ratified by Plaintiff, which provides for the arbitration of all claims arising out of that agreement. As alleged by Plaintiff, this dispute falls within the terms of the agreement to arbitration.

On March 10, 2015, counsel for Defendants gave written notice of this motion to Douglas Linde, counsel for Plaintiff, and requested that the parties confer pursuant to L.R. 7-3. Mr. Linde did not respond. Declaration of Alexandra Siegel ¶¶ 6-7. On March 16, 2015, counsel for Defendants sent a letter to Mr. Linde which set forth in further detail the basis for this motion, and again requested that he confer pursuant to L.R. 7-3. *Id*. at ¶ 7. Mr. Linde has not provided more than a

1  cursory response or made any effort to advise Defendants of Plaintiff's position,

2  notwithstanding good faith attempts by counsel for Defendants to confer concerning

3  this motion.  *Id.* at ¶¶ 8-10.

4

5  Dated: March 23, 2015                    IRELL & MANELLA LLP
                                            David Nimmer
6                                           David A. Schwarz
7                                           Alexandra Siegel

8

9
                                            By: _____ /s/ David N. Nimmer _____
10
                                                David N. Nimmer
11                                              Attorney for Defendants
                                                *SHELTON JACKSON LEE and*
12                                              *FORTY ACRES AND A*
13                                              *MULE FILMWORKS, INC.*

14

15  Dated: March 23, 2015                    PRIMUTH & DRISKELL LLP

16

17
                                            By: _____ /s/ Joshua R. Driskell _____
18
                                                Joshua R. Driskell
19                                              Attorney for Defendants
                                                *11:24 DESIGN, INC. and ART SIMS*
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................1

II.   STATEMENT OF FACTS ...............................................................3

III.  ARGUMENT ....................................................................................5

   A.   The Enforceability of the Agreement's Dispute Resolution
        Provision is Governed by the FAA ........................................5

   B.   Plaintiff is Bound by the Arbitration Provision of the
        Agreement .................................................................................7

        1.   Plaintiff Himself Drafted the Arbitration Clause in
             Question ..........................................................................7

        2.   The Arbitration Provision Encompasses Plaintiff's
             Claims .............................................................................8

   C.   Lee and 40 Acres are Entitled to Compel Arbitration .........9

        1.   Lee and 40 Acres May Compel Arbitration Under
             the Doctrine of Equitable Estoppel ..............................9

             (a)   Plaintiff's Claims Are "Intimately Founded in
                   and Intertwined with" the Agreement ...............10

             (b)   Plaintiff Alleges Interdependent and
                   Concerted Misconduct by All Defendants that
                   is "Founded in or Intimately Connected
                   With" the Agreement............................................12

        2.   Lee and 40 Acres May Compel Arbitration Under
             the Theory of Agency .................................................13

        3.   Lee and 40 Acres May Compel Arbitration Because
             They Were Known and Intended Third Party
             Beneficiaries of the Agreement .................................14

IV.   CONCLUSION ..............................................................................15

DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND TO STAY
OR DISMISS THE LITIGATION

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
    513 U.S. 265 (1995) ................................................................................... 6

*Arthur Andersen LLP v. Carlisle,*
    556 U.S. 624 (2009) ................................................................................... 9

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011) ............................................................................... 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986) ............................................................................... 6, 8

*Binder v. Aetna Life Ins. Co.,*
    75 Cal. App. 4th 832 (1999) ...................................................................... 7

*Bosinger* v. *Phillips Plastics Corp.,*
    57 F. Supp. 2d 986 (S.D. Cal. 1999) ........................................................ 8

*Boucher v. Alliance Title Co.,*
    127 Cal. App. 4th 262 (2005) .................................................................. 12

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991) ................................................................................... 7

*Cartagena Enters v. J. Walter Thompson Co.,*
    No. 13 Civ. 4238 (SAS) 2013 U.S. Dist. LEXIS 149597 (S.D.
    N.Y. Oct. 16, 2013) ................................................................................. 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000) ................................................................... 6

*Clay v. Permanente Med. Grp., Inc.,*
    540 F. Supp. 2d 1101 (N.D. Cal. 2007) .................................................... 5

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006) ................................................................... 9

*Engalla v. Permanente Med. Grp.,*
    15 Cal. 4th 951 (1997) ............................................................................... 7

*Goldman v. KPMG LLP,*
    173 Cal. App. 4th 209 (2009) ............................................................ 10, 12

*Green Tree Fin. Corp. v. Randolph,*
    531 U.S. 79 (2000) ..................................................................................... 6

*Grigson v. Creative Artists Agency L.L.C.,*
    210 F.3d 524 (5th Cir. 2000) ................................................................... 10

**Page(s)**

*Hakopian v. Mukasey,*
    551 F.3d 843 (9th Cir. 2008) ............................................................... 4

*Jones v. Jacobson,*
    195 Cal. App. 4th 1 (2011) ................................................................ 11

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2012) .............................................. 9, 10, 12

*Lewis v. UBS Fin. Servs. Inc.,*
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................ 3

*Litton Fin. Printing v. NLRB,*
    501 U.S. 190 (1991) ............................................................................ 6

*Marenco v. DirecTV LLC,*
    233 Cal. App. 4th 1409 (2015) ................................................ 6, 9, 12

*Matthau v. Super. Ct.,*
    151 Cal. App. 4th 593 (2007) ........................................................... 14

*Melez v. Kaiser Found. Hosps., Inc.,*
    No. 2:14-CV-08772-CAS, 2015 WL 898455 (C.D. Cal. Mar. 2,
    2015) ..................................................................................................... 7

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship,*
    109 Cal. App. 4th 1705 (2003) .............................................. 9, 11, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ............................................................................ 8

*Molecular Analytical Systems v. Ciphergen Biosystems LLC,*
    186 Cal. App. 4th 696 (2010) ............................................................ 9

*Mortensen v. Bresnan Commc'n., LLC,*
    722 F.3d 1151 (9th Cir. 2013) ........................................................ 5, 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ............................................................................ 5, 6

*MS Dealer Serv. Corp. v. Franklin,*
    177 F.3d 942 (11th Cir. 1999) ..................................................... 10, 12

*Murphy v. DirecTV Inc.*
    724 F.3d 1218 (9th Cir. 2013) ........................................................... 9

*Nguyen v. Tran,*
    157 Cal. App. 4th 1032 (2007) ......................................................... 14

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) ............................................................. 8

1
**Page(s)**

2

3
*Thomas v. Westlake,*
  204 Cal. App. 4th 605 (2012)................................................................13, 14

4
*Valley Casework, Inc. v. Comfort Construction, Inc.,*
5    76 Cal. App. 4th 1013 (1999).........................................................13

6
*ValueSelling Assocs., LLC v. Temple,*
  No. 09-CV-1493-JM,
7    2009 U.S. Dist. LEXIS 104174 (S.D. Cal. Nov. 5, 2009) ............................11

8
*Westra v. Marcus,*
  129 Cal. App. 4th 752 (2005).......................................................13

9

**Statutes**

10
Cal. Civ. Code § 1559........................................................................14

11
**Other Authorities**

12
Federal Arbitration Act,
13    9 U.S.C. § 2 ............................................................................5

14
Federal Arbitration Act,
  9 U.S.C. § 4 .....................................................................1, 6

15
Federal Arbitration Act,
16    9 U.S.C. § 1 ............................................................................1

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Art Sims ("Sims"), 11:24 Design, Inc. ("11:24"), Shelton Jackson Lee, a/k/a "Spike" Lee ("Lee") and 40 Acres and a Mule Filmworks, Inc. ("40 Acres," and collectively, "Defendants") respectfully submit this memorandum in support of their joint motion to compel Plaintiff Juan Luis Garcia ("Plaintiff" or "Garcia") to arbitrate this dispute and for a stay (or, in the alternative, a dismissal) of this litigation pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4.

## I.    INTRODUCTION

This action for copyright infringement belongs in arbitration rather than in this Court.  Plaintiff is a graphic artist who worked on poster art to promote the motion picture *Oldboy*.  On January 8, 2015, Plaintiff produced the "Project Confirmation Agreement" (the "Agreement") concerning the use of Plaintiff's work. Plaintiff created the Agreement.  He sent the Agreement to his clients, Defendants 11:24 and Sims.  Sims/11:24 received the Agreement.  The Agreement is attached as Exhibit A to the Declaration of Alexandra Siegel.

Although the Agreement is not signed, it states that "use" of the "designs" allegedly created by Plaintiff, "or payment in full of the invoice, constitutes acceptance of all terms and conditions" of the Agreement.  Plaintiff alleges that Defendants "used" his "Subject Posters" to promote *Oldboy*.  He admits that he received payment.  By his own admissions, the Agreement became binding when payment was tendered for the work and/or when the work was used by Defendants.

The Agreement contains a "Dispute Resolution" clause which states that "[a]ny disputes in excess of the maximum limit for small-claims court arising out of this Agreement shall be submitted to binding arbitration before a mutually agreed-upon arbitrator pursuant to the rules of the American Arbitration Association."  Ex. A at ¶ 15 (the "Arbitration Provision").  The Arbitration Provision is binding on Garcia.  Sims and 11:24 are entitled to compel Garcia to arbitrate any claims "arising out" of the Agreement, including the alleged misuse of his designs.

Plaintiff's claims are inextricably intertwined with the terms of the Agreement.  He alleges that the posters were not "under license" to Defendants (FAC ¶ 18), ignoring the Agreement's express grant to Sims/11:24 of non-exclusive rights in the "Designs" (Siegel Decl. Ex. A at ¶ 3).  The Agreement expressly disavowed any right of Garcia to affix a copyright notice or authorship credit in his name to the "Designs."  He admits that he did not affix any copyright management information to any of the posters (*Id.* at Ex. B at 8 (RFA No.12) – in contradiction of his allegation that Defendants "remov[ed] Plaintiff's name and copyright notice from the Subject Posters" (FAC ¶ 31).  He alleges that he alone owns the posters, including the images used in them (*Id.* at ¶ 18) – but contradicts this charge by admitting that the images used in two of the three posters (production photograph stills from the film itself) were provided by Sims/11:24 – ***not*** created by Garcia (Siegel Decl. Ex. B at 3-5).

Though he now alleges that Defendant's "use" of the posters was based on the "condition precedent" that he be paid (FAC ¶ 16), Plaintiff cannot deny that "use" constituted acceptance of all terms and conditions of the Agreement, including the Arbitration Provision.  He doesn't deny that Sims and/or 11:24 made a payment to him of $450.00 – the "Amount Due" for in "payment in full of the Invoice."  Siegel Decl. Ex. A at ¶ 3.  Plaintiff admits that he received payment; while he asserts that it was "a non-conforming insufficient tender," (*Id.* at Ex. B at 9-10 (RFA No.17)), there is apparently no dispute the amount he received is the amount he invoiced. Whether by Defendants' alleged "use," or Garcia's receipt of payment in the amount invoiced, Garcia's own contract binds him to arbitrate this dispute, including whether he is now barred from disclaiming the grant of non-exclusive rights in the Agreement.

Lee and 40 Acres are also entitled to compel Garcia to arbitrate his claims against them.  Plaintiff alleges that Lee and 40 Acres acted at all times as the "agent," "principal," "joint venturer," "alter-ego," and "manager" of Sims/11:24

1   (and vice-versa), and "actively participated in, or subsequently ratified and adopted"

2   each act alleged in the Complaint.  FAC ¶ 12.  Garcia cannot simultaneously claim

3   that Lee and 40 Acres are acting in concert with Sims/11:24 and avoid arbitration as

4   to all claims against Lee and 40 Acres, whether under an agency or third party

5   beneficiary theory, or under principles of equitable estoppel.

6       Plaintiff cannot avoid the consequences of his admissions, or attempt to plead

7   around them by selectively ignoring his own Agreement, his allegations, or his

8   admissions, including those which contradict his Complaint.  Plaintiff should be

9   compelled to arbitrate all of his claims, against all of the Defendants, per the

10  Arbitration Provision set forth in his own contract.[1]

11  **II.      STATEMENT OF FACTS**

12      In early 2013, Sims and 11:24 worked with Plaintiff to create poster art for

13  potential use in promoting the motion picture film *Oldboy*.  The scope of the work

14  and the terms and conditions for Garcia's services were set forth in an agreement,

15  dated February 10, 2013, that was created by Garcia, and sent to and received by

16  Sims/11:24.  Sims Decl. at ¶ 2.  The Agreement is a two-page document.  The front

17  page contains the "Invoice" information, including the description of the designs to

18  be delivered, the "unit" cost for each item, and the "Amount Due – "$450.00 USD."

19  Siegel Decl. Ex. A.  The second page sets forth the "Project Confirmation

20  Agreement" between Garcia and 11:24. *Id.*

21

22

23      [1] This Court has the discretion to dismiss this litigation where, as here, all
    claims are subject to arbitration.  *See, e.g. Lewis v. UBS Fin. Servs. Inc.*, 818 F.

24  Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("The Ninth Circuit […] has held that courts
    have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration

25  agreement); *see also Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.,* No. 1:13-
    CV-1409 AWI SKO 2013 WL 6844270, at *11 (E.D. Cal. Dec. 26, 2013) (finding

26  that there was "little utility in staying this case" where the Court had determined that
    all of Plaintiff's claims were subject to the relevant arbitration clause, and ordering

27
28  dismissal of the litigation instead).

Plaintiff identified the Agreement as the contract relevant to the work he performed in relation to *Oldboy* (*Id*. at Ex. C at 3).  On January 8, 2015, he produced the Agreement in discovery.  *Id*. at ¶ 3.  Plaintiff admits that he sent the Agreement to 11:24 and/or Sims.  *Id*. at Ex. B at 9 (RFA No.16).  Sims received the Agreement on or about March 26, 2013.

The Agreement is "binding" on Garcia and 11:24 as parties, and their "heirs, successors, assigns, and personal representatives."  *Id*. at Ex. A at ¶ 16.  Garcia alleges that Sims is the "principal and owner of 11:24."  FAC ¶ 10.

The Agreement requires arbitration of disputes arising out of the Agreement:

> 15. DISPUTE RESOLUTION: Any disputes in excess of the maximum limit for small-claims court arising out of this Agreement shall be submitted to binding arbitration before a mutually agreed-upon arbitrator pursuant to the rules of the American Arbitration Association. The Arbitrator's award shall be final, and judgment may be entered in any court having jurisdiction thereof. The client shall pay all arbitration and court cost, reasonable attorney's fees, and legal interest on any award of judgment in favor of the Designer. All actions, whether brought by client or by designer will be filed in the State of California.

The Agreement also contains a Grant of Rights Provision which sets forth the terms dictating acceptance of the Agreement, and the grant to 11:24 of rights to Garcia's designs:

> 3. GRANT OF RIGHTS: Upon receipt of full payment, Designer grants to the Client non-exclusive rights to the final Designs. **Use of any image described above, or payment in full of the Invoice, constitutes acceptance of all terms and conditions expressed on both sides of this document**. Invoice and License are subject to all terms and conditions on both sides of this document (emphasis added).

Plaintiff alleges that three of the posters he allegedly designed were "used by Defendants" to promote the motion picture film *Oldboy*.  FAC ¶ 17.  Garcia alleges that "at all times relevant" each Defendant, including Lee and 40 Acres, "was the agent, affiliate, officer, director, manager, principal, partner, joint venturer, alter-ego and/or employee of the remaining Defendants," and was acting within the scope of such relationship.  *Id*, at ¶ 12.  "Allegations in a complaint are considered judicial admissions."  *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008).  Thus,

1    Defendants' "use" of the "Subject Posters – by 11:24 as party to the Agreement; by

2    Sims as the "personal representative" of 11:24; and (as alleged) by Lee and 40 Acres

3    as "agents" and/or "principals" of Sims/11:24 – constitutes acceptance of the

4    Agreement's terms and conditions, including the Arbitration Provision and the

5    Grant of Rights Provision.

6        Pursuant to the Agreement, the "Amount Due" per the Invoice is $450.00, and

7    "payment in full of the Invoice [] constitutes acceptance of all terms and

8    conditions."  Siegel Decl. Ex A at ¶ 3.  Garcia does not deny receipt of payment; nor

9    does he (apparently) deny that the payment was for the invoiced amount of $450.00.

10   In response to the following Request for Admission – "Admit that 11:24 and/or

11   SIMS tendered to YOU payment of $450.00" – Garcia admitted that "Defendant

12   made a non-conforming insufficient tender."  *Id*. at Ex. B at 9-10 (RFA No.17).

13   **III.   ARGUMENT**

14       **A.      The Enforceability of the Agreement's Dispute Resolution**

15               **Provision is Governed by the FAA**

16       The Federal Arbitration Act (the "FAA") reflects a "liberal federal policy

17   favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

18   U.S. 1, 24 (1983).  The Ninth Circuit recognizes that "the FAA's purpose is to give

19   preference (instead of mere equality) to arbitration provisions."  *Mortensen v.*

20   *Bresnan Commc'n., LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (citing *AT&T*

21   *Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011)).

22       The FAA makes agreements to arbitrate in "a contract evidencing a trans-

23   action involving commerce […] valid, irrevocable, and enforceable, save upon such

24   grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

25   "[T]he Supreme Court has interpreted the phrase 'involving commerce' very

26   broadly, holding that it extends beyond 'persons or activities within the flow of

27   interstate commerce' to include anything that affects commerce."  *Clay v.*

28   *Permanente Med. Grp., Inc.*, 540 F. Supp. 2d 1101, 1105 (N.D. Cal. 2007) (citation

1   omitted); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273, 277

2   (1995).  The Agreement concerns the creation and licensing of designs for potential

3   use as promotional materials for an internationally-released motion picture film. The

4   "affecting commerce" requirement has clearly been met.

5          The Court's role under the FAA is "limited to determining (1) whether a valid

6   agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses

7   the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126,

8   1130 (9th Cir. 2000) (citing 9 U.S.C. § 4).  "If the response is affirmative on both

9   counts, then the Act requires the court to enforce the arbitration agreement in

10  accordance with its terms," and stay the litigation pending arbitration of the dispute

11  pursuant to 9 U.S.C. §§ 3-4.  *Id.*

12         The FAA requires arbitration "unless it may be said with positive assurance

13  that the arbitration clause is not susceptible of an interpretation that covers the

14  asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

15  650 (1986); *see also Moses H. Cone,* 460 U.S. at 24-25 ("any doubts concerning the

16  scope of arbitrable issues should be resolved in favor of arbitration").  The party

17  challenging the enforceability of an arbitration agreement bears the burden of

18  proving that the provision is unenforceable. *Mortensen,* 722 F.3d at 1157 (citing

19  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).  To the extent any

20  ambiguity in agreements involving arbitration exists, the strong presumption in

21  favor of arbitration shall apply. *Litton Financial Printing Division, Litton Business

22  Systems, Inc. v, NLRB*,  501 U.S. 190, 209 (1991).  That presumption is reinforced

23  where, as here, Plaintiff drafted the Agreement.

24         "Under the FAA, state contract law applies in order to determine whether the

25  parties have entered a binding agreement to arbitrate." *Marenco v. DirecTV LLC*,

26  233 Cal. App. 4th 1409, 1417 (2015).  The Agreement specifies that it shall be

27  governed by the laws of the state of California.  Siegel Decl. Ex. A at ¶ 16.  Under

28  California law, Garcia has the burden of proving a defense to the enforceability of

DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND TO STAY
OR DISMISS THE LITIGATION

1  an arbitration agreement by a preponderance of the evidence.  *See Melez v. Kaiser*

2  *Found. Hosps., Inc.,* No. 2:14-CV-08772-CAS, 2015 WL 898455, at *3 (C.D. Cal.

3  Mar. 2, 2015) (citing *Engalla v. Permanente Med. Grp. Inc.*, 15 Cal. 4th 951, 972

4  (1997)).

5  **B.   Plaintiff is Bound by the Arbitration Provision of the Agreement**

6  **1.   Plaintiff Himself Drafted the Arbitration Clause in Question**

7  A party's acceptance of an agreement to arbitrate may be express, as where a

8  party signs the agreement, or where mutual assent is manifested by written or

9  spoken words, or by conduct.  *Binder v. Aetna Life Ins. Co*., 75 Cal. App. 4th 832,

10  850 (1999).  Acceptance of contract terms may be implied through action or

11  inaction.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991).

12  This is not a case where a defendant seeks to compel arbitration based on the

13  contention that the plaintiff received an employee handbook, or a "click wrap"

14  agreement, containing an arbitration clause buried in the fine print.  It is not the case

15  here that Defendants seek to impose an agreement they drafted, let alone a

16  boilerplate contract presented to Garcia on a "take it or leave it" basis.  Nor is it the

17  case that Defendants seek to bind Garcia as a non-signatory who may otherwise

18  have been unaware of the Agreement's terms.

19  Plaintiff created, approved, transmitted, and ratified the terms of his own

20  Agreement.  He admits that he provided the Agreement to 11:24 and Sims.  Siegel

21  Dec. Ex. B at 9.  He alleges that he performed the work described in the Agreement.

22  He specified that "use" of the designs of the Subject Posters constituted acceptance

23  of the Agreement (*Id*., Ex. A at ¶ 3), and alleges that Defendants used his work in

24  connection with the promotion of *Oldboy* (FAC ¶ 17).

25  The Agreement provides that "payment in full of the Invoice constitutes

26  acceptance of all terms and conditions" expressed therein.  Siegel Decl. Ex. A at ¶ 3.

27  The Agreement sets forth the amount to be paid for the work to be performed by

28  Garcia, which was tendered by Sims.  *Id*. at Ex. A at 1.  Plaintiff does not deny

1  receipt of payment.  He cannot deny that the Agreement specifies $450.00 as the

2  amount to be paid under the Agreement.  He admits that Sims/11:24 tendered a

3  payment of $450.00, though unilaterally claims that this amount "a non-conforming

4  insufficient tender."  *Id*. at Ex. B at 9-10 (RFA No.17).  These admissions bind

5  Garcia to the terms of the contract he drafted, whether or not he now claims that he

6  should have been paid more than what the Agreement specified.

7       **2.       The Arbitration Provision Encompasses Plaintiff's Claims**

8         Under the FAA, a court must compel arbitration "unless it may be said with

9  positive assurance that the arbitration clause is not susceptible of an interpretation

10  that covers the asserted dispute."  *AT&T Techs., Inc.*, 475 U.S. at 650.  For

11  arbitration to be required, the Plaintiff's allegations "need only 'touch matters'

12  covered by the contract containing the arbitration clause and all doubts are to be

13  resolved in favor of arbitrability."  *Simula, Inc.* v. *Autoliv, Inc.,* 175 F.3d 716, 721

14  (9th Cir. 1999) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*.,

15  473 U.S. 614, 624 n.13 (1985)).

16         The Agreement commits to arbitration "[a]ny disputes in excess of the

17  maximum limit for small-claims court arising out of this Agreement."  Siegel Decl.

18  Ex. A at ¶ 15.  This broad provision encompasses all of Plaintiff's claims.  *See*

19  *Bosinger* v. *Phillips Plastics Corp.,* 57 F. Supp. 2d 986, 993 (S.D. Cal. 1999)

20  ("[A]ny dispute between contracting parties that is in any way connected with their

21  contract could be said to 'arise out of' their agreement and thus be subject to

22  arbitration under a provision employing this language"); *see also Simula*, 175 F.3d

23  at 721 (holding that "the language 'arising in connection with' reaches every dispute

24  between the parties having a significant relationship to the contract and all disputes

25  having their origin or genesis in the contract").  Here, each of Plaintiff's claims

26  "arise out of" the Agreement, as (1) Plaintiff's claims all stem from the alleged

27  misuse of designs Plaintiff worked on as a result of his Agreement; and (2) whether

28  the alleged use of the designs constitutes misuse is at least in part dependent on the

DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND TO STAY
OR DISMISS THE LITIGATION

1  terms of the Agreement, including the Grant of Rights Provision.  The Arbitration

2  Provision encompasses Plaintiff's claims in this case.

3        **C.**     **Lee and 40 Acres are Entitled to Compel Arbitration**

4       "[A] litigant who is not a party to an arbitration agreement may invoke

5  arbitration under the FAA if the relevant state contract law allows the litigant to

6  enforce the agreement."  *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1128 (9th

7  Cir. 2012); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

8  Under California law, a non-signatory to a contract may compel arbitration against a

9  party to the contract as a matter of (1) equitable estoppel; (2) agency; or (3) third-

10 party beneficiary status.  *Marenco*, 233 Cal. App. 4th at 1417; *see also Murphy v.

11 DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  Lee and 40 Acres are entitled

12 to compel Plaintiff to arbitrate his claims under each of those theories.

13       **1.**     **Lee and 40 Acres May Compel Arbitration Under the**

14                **Doctrine of Equitable Estoppel**

15      The doctrine of equitable estoppel "precludes a party from claiming the

16 benefits of a contract while simultaneously attempting to avoid the burdens that

17 contract imposes." *Kramer*, 705 F.3d at 1128 (quoting *Comer v. Micor, Inc*., 436

18 F.3d 1098, 1101 (9th Cir. 2006)).  "The doctrine applies where, for example, a

19 signatory plaintiff sues a nonsignatory defendant for claims that are based on an

20 underlying contract.  In such instance, the plaintiff may be equitably estopped to

21 deny the nonsignatory defendant's right to enforce an arbitration clause that is

22 contained within the contract that the plaintiff has placed at issue." *Marenco*, 233

23 Cal. App. 4th at 1417 (citing *Molecular Analytical Systems v. Ciphergen Biosystems*

24 *LLC,* 186 Cal. App. 4th 696, 706 (2010)).  In the context of a non-signatory seeking

25 to compel a signatory to arbitrate, the doctrine serves to protect the integrity of

26 arbitration agreements and the policies favoring arbitration.  *See, e.g*., *Metalclad*

27 *Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1714

28 (2003) (equitable estoppel "prevents a party from playing fast and loose with its

commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage"); *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (a signatory cannot "have it both ways: it cannot on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory" (citation omitted)).

Where a non-signatory seeks to enforce an arbitration clause, "equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer*, 705 F.3d at 1129 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219-221 (2009)). Both circumstances apply here.

### (a)   Plaintiff's Claims Are "Intimately Founded in and Intertwined with" the Agreement

Equitable estoppel applies under the first circumstance "if the [plaintiff's] claims against the nonsignatory are dependent upon or inextricably bound up with" the obligations imposed by the contract to which a signatory plaintiff and signatory defendant are parties. *Goldman*, 173 Cal. App. 4th at 229-30. "[M]erely 'mak[ing] reference to' an agreement with an arbitration clause is not enough." *Id*. at 218. "Equitable estoppel applies 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory.'" *Id*. (quoting *MS Dealer Serv. Corp. v.*

1  *Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see also Jones v. Jacobson*, 195 Cal.

2  App. 4th 1, 20 (2011).

3       Here, Plaintiff's claims necessarily arise from and are "dependent on" and

4  "bound up with" the terms of the Agreement.  The very existence of the posters at

5  issue arises from the relationship between Plaintiff and 11:24, Sims, and the

6  promotion of *Oldboy*, which is governed by the terms of the Agreement.  *See*

7  *ValueSelling Assocs., LLC v. Temple*, No. 09-CV-1493-JM, 2009 U.S. Dist. LEXIS

8  104174, at *10 (S.D. Cal. Nov. 5, 2009) (holding that a nonsignatory defendant

9  could compel arbitration against a signatory Plaintiff where Plaintiff's "copyright

10  and trademark infringement claims are dependent upon the relationship and the

11  contracts entered into by the parties, all containing arbitration clauses").

12       The Agreement defines the parties' rights of copyright ownership and

13  authorship – the grant of which rights are integral to Plaintiff's claims.  For

14  example, the Agreement "grants to the Client non-exclusive rights to the final

15  Designs" upon "receipt of full payment."  Siegel Decl. Ex. A at ¶ 3.  Any claim by

16  Plaintiff that Lee or 40 Acres, the alleged agents, principals, joint venturers, or alter

17  egos of 11:24 or Sims, infringed Plaintiff's copyrights or misused Plaintiff's images

18  necessarily implicates the provisions of the Agreement concerning licensing or the

19  copyright notice or authorship credit to accompany any reproduction of the

20  "Designs."  *Id*. at Ex. A at ¶¶ 3, 11-12.

21       Moreover, Plaintiff seeks damages against Lee and 40 Acres that are

22  intertwined with the Agreement.  Plaintiff's claimed right to recover actual damages

23  is dependent on or bound up with multiple provisions of the Agreement, including

24  the "use" of the designs, the "Grant of Rights" provision, and the "Fee" and

25  "Payment" provisions.  *Id*. at Ex. A at ¶¶ 3, 5, and 8.  Accordingly, Plaintiff may not

26  seek the benefit of damages that stem from the terms of the Agreement while

27  denying Lee and 40 Acres' right to arbitrate under that Agreement.  *See Metalclad*

28  *Corp,* 109 Cal. App. 4th at 1717 (estoppel prevented the signatory plaintiff from

1  agreeing to arbitration in the underlying contract but then seeking the benefit of that

2  contract in the form of damages from a non-signatory defendant under claims

3  "intimately founded in and intertwined with" the contract).

          **(b)**      **Plaintiff Alleges Interdependent and Concerted**

                  **Misconduct by All Defendants that is "Founded in or**

                  **Intimately Connected With" the Agreement**

7        Equitable estoppel is also warranted when "the signatory alleges substantially

8  interdependent and concerted misconduct by the nonsignatory and another signatory

9  and 'the allegations of interdependent misconduct [are] founded in or intimately

10  connected with the obligations of the underlying agreement.'"  *Kramer*, 705 F.3d at

11  1129 (quoting *Goldman*, 173 Cal. App. 4th at 219).  *Accord Marenco*, 233 Cal. App.

12  4th at1419 (quoting *Boucher v. Alliance Title Co.,* 127 Cal. App. 4th 262, 271–272

13  (2005)). "Otherwise, the arbitration proceedings between the two signatories would

14  be rendered meaningless and the federal policy in favor of arbitration effectively

15  thwarted." *MS Dealer Serv. Corp.*, 177 F.3d at 947 (citation omitted).

16        Here, there is no question that Plaintiff alleges "interdependent and concerted

17  misconduct" by non-signatories Lee and 40 Acres and parties to the contract 11:24

18  and Sims.  Plaintiff makes no substantive differentiation in his claims against

19  Defendants.  Instead, Plaintiff alleges that each Defendant "was the agent, affiliate,

20  officer, director, manager, principal, partner, joint venture, alter-ego and/or

21  employee of the remaining Defendants and was at all times acting within the scope

22  of such agency, affiliate, officer, director, manager, principal, partner, joint venture,

23  alter-ego and/or employment relationship."  FAC¶ 12.  Plaintiff only makes

24  reference to each individual defendant in order to identify them as parties;

25  throughout the rest of the Complaint he simply refers to "Defendants" in each

26  allegation.  There can be no doubt Plaintiff has alleged "substantially interdependent

27  and concerted misconduct" by 11:24 and Sims, who are parties to the Agreement,

28  and Lee and 40 Acres, who are non-signatories.

Further, for the same reasons that all of Plaintiff's claims are "intimately founded in and intertwined with" the Agreement, Plaintiff's allegations of "interdependent and concerted" misconduct by all Defendants are necessarily "founded in or intimately connected with" the Agreement.  Lee and 40 Acres are entitled to compel arbitration under either or both applicable prongs of the doctrine of equitable estoppel.

## 2.    Lee and 40 Acres May Compel Arbitration Under the Theory of Agency

In California, a "nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (2005).  *Accord Valley Casework*, *Inc. v. Comfort Constr.*, *Inc.*, 76 Cal. App. 4th 1013, 1021-22 (1999) (non-signatory defendants may enforce agreements "where there is sufficient identity of parties. For example, defendants who are not signatories to an arbitration agreement, but who are acting as agents for the party to the arbitration provision, may be allowed to enforce the arbitration clause").  This rule applies even where the agency relationship is contested by the defendant.  *See Thomas v. Westlake*, 204 Cal. App. 4th 605, 614 (2012) ("when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement, the defendant may enforce the agreement even though the defendant is not a party thereto… Having alleged all defendants acted as agents of one another, [Plaintiff] is bound by the legal consequences of his allegations.").

Plaintiff alleges that each Defendant "was the agent, affiliate, officer, director, manager, principal, partner, joint venture, alter-ego and/or employee of the remaining Defendants and was at all times acting within the scope of such agency,

1  affiliate, officer, director, manager, principal, partner, joint venture, alter-ego and/or
2  employment relationship."  FAC ¶ 12.  Plaintiff is therefore bound by his allegations
3  that 11:24 and Sims acted as the agents of Lee and 40 Acres, and may not
4  selectively choose in which contexts the alleged agency relationship applies and in
5  which it does not.  *See Westlake*, 204 Cal. App. 4th at 614 (holding that a plaintiff
6  may not invoke agency as a theory of tort liability but choose not to have those
7  allegations of agency apply in the context of an arbitration agreement).  As stated in
8  *Metalclad*, "[h]e who takes the benefit must bear the burden."  109 Cal. App. 4th at
9  1719.  Because Plaintiff has alleged that 11:24 and/or Sims were acting as agents of
10 Lee and 40 Acres at all times relevant to the FAC, including the time Plaintiff
11 created and sent to 11:24 and/or Sims the Agreement, Lee and 40 Acres are entitled
12 to compel arbitration.

13               **3.**     **Lee and 40 Acres May Compel Arbitration Because They**
14                          **Were Known and Intended Third Party Beneficiaries of the**
15                          **Agreement**

16         California law also provides for the enforcement of arbitration agreements by
17 or against nonsignatories "where a nonsignatory is a third party beneficiary of the
18 agreement…"  *Nguyen v. Tran,* 157 Cal. App. 4th 1032, 1036 (2007).  A third party
19 may only assert rights under a contract if the contracting parties intended the
20 contract to benefit the third party.  *See* Cal. Civ. Code § 1559; *see also Matthau v.*
21 *Super. Ct.,* 151 Cal. App. 4th 593, 602 (2007) ("A third party beneficiary is
22 someone who may enforce a contract because the contract is made expressly for his
23 benefit.  The mere fact that a contract results in benefits to a third party does not
24 render that party a third party beneficiary").

25         Here, the very purpose for which the Agreement was created was to contract
26 for the creation and potential use of posters to promote a film directed by Lee (FAC
27 ¶ 7), and (as alleged) co-produced by 40 Acres, "a production company" owned by
28 Lee.  FAC ¶ 8.  As alleged, Lee and 40 Acres were thus known and intended third

DEFENDANTS' JOINT NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND TO STAY
OR DISMISS THE LITIGATION

1  party beneficiaries of the Agreement and may compel Plaintiff to arbitrate his

2  claims.  *See Cartagena Enters v. J. Walter Thompson Co.*, No. 13 Civ. 4238 (SAS)

3  2013 U.S. Dist. LEXIS 149597 at *19 (S.D.N.Y. Oct. 16, 2013) (concerning a

4  licensing agreement for the creation of materials to be used in an advertising

5  campaign by a non-signatory client of a signatory agency, and finding that as it was

6  clear the contract was for the benefit of the non-signatory,  the non-signatory could

7  compel arbitration).

8  **IV.    CONCLUSION**

9       For the reasons set forth above, and consistent with the "liberal federal policy

10  favoring arbitration agreements," Defendants 11:24, Sims, Lee, and 40 Acres

11  respectfully request that the Court issue an order compelling arbitration of Plaintiff's

12  claims against all Defendants and staying (or, in the alternative, dismissing) this

13  litigation.

14  Dated: March 23, 2015                           IRELL & MANELLA LLP

15                                                  David Nimmer
                                                    David A. Schwarz
16                                                  Alexandra Siegel

17

18                                     By:_____/s/ David N. Nimmer_____

19                                          David N. Nimmer
                                            Attorney for Defendants
20                                          *SHELTON JACKSON LEE and*
                                            *FORTY ACRES AND A*
21                                          *MULE FILMWORKS, INC.*

22

23  Dated: March 23, 2015                           PRIMUTH & DRISKELL LLP

24

25                                     By:_____/s/ Joshua R. Driskell_____

26                                          Joshua R. Driskell
                                            Attorney for Defendants
27                                          *11:24 DESIGN, INC. and ART SIMS*

28